IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHENECQUA BUTT, TANYA MITCHELL, THERESA HOWARD and ELLEN BRONSON<br><br>v.<br><br>PHILADELPHIA HOUSING AUTHORITY, METROPOLITAN REGIONAL COUNCIL OF CARPENTERS & JOINERS OF AMERICA, EDWARD COYELL, SR. (officially and personally) and MARK DURKALEC (officially and personally) | CIVIL ACTION<br><br>NO. 09-4285 (lead case, consolidated with 10-2633, 10-3269, and 13-374) |

## MEMORANDUM STATING REASONS FOR ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION

### I.  Introduction

In this consolidated employment discrimination action originating in 2009,[1] Plaintiffs Shenecqua Butt ("Butt"), Tanya Mitchell ("Mitchell"), Ellen Bronson ("Bronson"), and Theresa Howard ("Howard," and collectively, "Plaintiffs") bring claims against their labor union, Metropolitan Regional Council of Carpenters, Southeastern Pennsylvania, State of Delaware and Eastern Shore of Maryland, United Brotherhood of Carpenters & Joiners of America (the "Union"), as well as their union representatives, Edward Coryell ("Coryell") and Mark Durkalec ("Durkalec," and collectively, "Union Defendants").  Howard separately and additionally brings claims against the Union Defendants, as well as the Philadelphia Housing Authority ("PHA"), a union contractor by which she was employed.

All Plaintiffs are African-American female carpenters who allege that they have received substantially fewer job assignments than male and white carpenters due to the various

---

[1] See ECF 205 at 2-4 (identifying all claims alleged in each of the four individual complaints: 09-cv-4285 (lead case), 10-cv-2633, 10-cv-3269, and 13-cv-374).

1

discriminatory and retaliatory behaviors of the defendants, in violation of, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and 42 U.S.C. § 1981 ("§ 1981").

On August 19, 2016, United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation (ECF 205, hereinafter, "R&R") recommending the resolution of three separate Motions for Summary Judgment, including:

(1) PHA's Motion for Summary Judgment, dated November 30, 2015, as to Howard's claims (ECF 148);

(2) the Union's Motion for Summary Judgment, dated November 30, 2015, as to Howard's claims (ECF 150); and

(3) the Union Defendants' Motion for Summary Judgment, dated December 15, 2015, as to all Plaintiffs' claims (ECF 151).

The parties filed various Objections to the R&R, as follows:

(1) Mitchell's Objections (ECF 206, "Mitchell Obj."), and supplemental memorandum of law (ECF 220, "Mitchell Obj. Mem.");

(2) The Union Defendants' Objections (ECF 207, 208, "Union Obj."), and supplemental memorandum of law (ECF 220, "Union Obj. Mem."); and

(3) Bronson, Butt, and Howard's Objections (ECF 209, "Pls.' Obj."), and supplemental memorandum of law (ECF 216, "Pls.' Obj. Mem.").

Oppositions to those objections were filed, as follows:

(1) PHA's Opposition to Plaintiffs' Objections (ECF 211), and supplemental memorandum of law (ECF 217);

(2) The Union's Opposition to Plaintiffs' Objections (ECF 218), and supplemental memorandum of law (ECF 219).

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of the portions of the R&R to which objections have been made. After an independent review of the record and for the reasons that follow, this Court found, by Order dated May 1, 2017 (ECF 222),

that all of the parties' Objections lacked merit, and adopted the R&R in its entirety. (See ECF 222). This Memorandum will state the principal reasons.

## II. Procedural History[2]

On January 26, 2012, this Court granted the Union Defendants' motion for summary judgment as to all of the plaintiffs' claims,[3] which the Third Circuit subsequently vacated and remanded for further proceedings. (ECF 54; <u>Butt v. United Bhd. of Carpenters & Joiners of Am.</u>, No. CIV.A. 09-4285, 2012 WL 360554, at *12 (E.D. Pa. Jan. 26, 2012), <u>vacated and remanded</u>, 512 F. App'x 233 (3d Cir. 2013)). On September 26, 2013, this Court referred the case to Judge Strawbridge for all further pretrial matters. (ECF 74).

On June 16, 2016, prior to issuing the instant R&R, Judge Strawbridge granted the Union Defendants' motion in limine (ECF 143) to preclude the expert reports of the Center for Forensic Economic Studies ("CFES"), which purported to compare the average hours worked by male and female members of the Union between 2003 and 2012, and to use that data to "provide a measure of the wages [Plaintiffs] lost as a consequence of the Union's alleged sex discrimination." (ECF 197 at 2). Judge Strawbridge concluded that the CFES reports could not meet the "reliability" requirement, pursuant to Federal Rule of Evidence 702, because (1) there were certain indications that the CFES was "misinformed about the allegations at issue in this litigation"; (2) the CFES reports were "improperly speculative"; and (3) "the CFES reports simply have not

---

[2] The full procedural history of this case is thoroughly set forth in pages 1-7 of the R&R.
[3] That motion was filed on July 1, 2011, which was before Howard filed the fourth complaint that was consolidated into this action (13-cv-374, Doc. Nos. 1, 28). Accordingly, the Court's opinion did not consider Howard's claims under the Davis-Bacon Act and the Labor Management Relations Act, which were raised for the first time in that complaint.

3

considered enough circumstances to conclude that gender discrimination is the cause of, rather than merely correlated with, the discrepancy in hours observed."[4] (Id. at 5, 7).

### III. Legal Standard

When objections are filed to a magistrate judge's report and recommendation, we are required to make a *de novo* determination of those portions of the report, findings or recommendations made by the magistrate judge to which there are objections. 28 U.S.C. § 636(b)(1); Rule 72.1(IV)(b) of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania. Furthermore, district judges have wide latitude regarding how they treat recommendations of the magistrate judge. See United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406 (1980). Indeed, by providing for a *de novo* determination, rather than a *de novo* hearing, Congress intended to permit a district judge, in the exercise of the court's sound discretion, the option of placing whatever reliance the court chooses to place on the magistrate judge's proposed findings and conclusions. We may accept, reject or modify, in whole or in part any of the findings or recommendations made by the magistrate judge. Id.

---

[4] Judge Strawbridge denied Butt, Bronson and Howard's motion for reconsideration as to that Motion in Limine, but granted Mitchell's request for clarification. (ECF 204; Butt v. United Bhd. of Carpenters & Joiners of Am., No. CV 09-4285, 2016 WL 7168399, at *1 (E.D. Pa. Aug. 18, 2016)). Judge Strawbridge "clairifie[d] . . . that its Order 'precluding 'the opinion evidence of CFES or the statistical data upon which it relies' (Doc. 198) did not bar every use of the raw numbers. . . [and] without specific evidence of context as to how any statistics in their entirety[,] and that "more briefing on the issue, as appropriate, could be helpful, as the primary focus of [the motion in limine] was on the unreliability of the CFES reports themselves, not their underlying data." Accordingly, Judge Strawbridge decided to defer to this Court "[w]hether the raw numbers are sufficiently probative of potential disparate treatment and/or damage calculations as to warrant introduction at trial for that purpose." (Id.).

4

## IV. Discussion

As detailed above, since the R&R as to each Motion for Summary Judgment was filed, the parties have filed various objections, memoranda of law in support of those objections, and oppositions to the objections, which the Court now considers in turn.

### a. THE UNION, DURKALEC AND CORYELL'S MOTION FOR SUMMARY JUDGMENT AS TO ALL PLAINTIFFS' CLAIMS (ECF 151)

#### i. Objections to R&R Part (A)(1): Judge Strawbridge's recommendation that the Court deny the Motion as to Plaintiffs' claims of gender and race discrimination under Title VII, the PHRA and § 1981

##### 1. Union Objections

###### a. "Failure to Refer"

The Union's first objection focuses on Judge Strawbridge's finding that Plaintiffs presented sufficient evidence to create a dispute of material fact as to whether the Union subjected Plaintiff to an "adverse employment action" (the third prong of the McDonnell-Douglas test) based on a "failure to refer," in violation of 42 U.S.C. § 2000e-2(c)(2). (Union Obj. at 2-5). The Union argues that the evidence in the record established that, to the contrary, the Union regularly referred Plaintiffs for work, and that practically all of Plaintiffs' work came with the assistance of the Union. (Id. at 4-5). It further argues that there is no evidence that Union members outside of Plaintiffs' protected class were referred for work more frequently or more regularly than those inside the class. (Id.).

This objection will be overruled. As expressed at pages 20-24 of the R&R, Judge Strawbridge thoroughly considered all of the evidence to which the Defendants point in the Objections. Judge Strawbridge even recognized that the Union's evidence regarding the existence of a "free solicitation" system and the Union's efforts to regularly refer Plaintiffs for

5

work was "persuasive." (R&R at 21-22). However, Judge Strawbridge "also accept[ed] that the Plaintiffs have presented contrary evidence[,]" including certain evidence—such as deposition testimony of "several Union members"—that could show discrimination in referrals, such that summary judgment as to those claims would be unwarranted. (Id. at 20-22). The Court agrees.

### b. Causing Discrimination

The Union next objects to this portion of the R&R on the basis that Plaintiffs have failed to present sufficient evidence to create a dispute of material fact as to whether the Union subjected Plaintiffs to any "adverse employment action" by "caus[ing] or attempting to cause an employer to discriminate" against Plaintiffs, in violation of 42 U.S.C. § 2000e-2(c)(3). (Union Obj. at 5-8). Specifically, the Union argues that Judge Strawbridge:

(1) improperly credited Plaintiffs' subjective beliefs about the hiring process, when there is no actual evidence that the Union exercised control over the hiring process (id. at 6);

(2) failed to consider Butt's and Mitchell's admissions in their depositions that they did not understand the Union's role (or lack thereof) in the hiring process (id. at 6-8);

(3) improperly relied on the relationship between the Union and the PHA as evidence of the Union's control or influence over the hiring process when, if anything, the evidence in the record shows that where the Union *could* exert influence over the hiring process, it *did* use that ability to help Plaintiffs obtain work, by referring them for jobs (id. at 8); and

(4) confused certain references in testimony regarding Union "references" with the term "referrals"; namely, that while there is testimony in the record about Union "references," there is no such testimony regarding "referrals," and only the latter could "connote" a level of control by the Union. (Union Obj. Mem. at 8).

6

These objections will also be overruled. Judge Strawbridge did not, as the Union argues, unduly rely on any individual portion of the record in concluding that there was a dispute of material fact as to whether the Union "cause[d] or attempt[ed] to cause an employer to discriminate" against Plaintiffs. 42 U.S.C. § 2000e-2(c)(3). Instead, he concluded that certain statements and testimony in the record substantiated Plaintiffs' claims that the Union exercised control over the referral process, and that there is a question of fact as to whether Plaintiffs were treated differently because of their sex and gender. (R&R at 26). Judge Strawbridge specifically, and correctly, pointed to:

(1) Mitchell's statement that Durkalec "plays a major role in determining what work its members are able to gain via referrals or assignments," (R&R at 20 (citing ECF 172-1 at 8));

(2) testimony of Union members Nicholas Cioni and Margarita Padin that PHA hiring decisions were made through the Union, specifically Durkalec (id. (citing ECF 172-4 at 32, 41)); and

(3) various statements made by Durkalec, most notable of which was his statement that "my people are still out of work," which Plaintiffs plausibly interpreted to mean that "my people" was a reference to "white men." (R&R at 24 (citing ECF 172-4 at 114-15)).

### c. Discriminatory Intent

The Union also objects to Part (A)(1) of the R&R on the basis that Plaintiffs failed to present sufficient evidence to show that the Union exhibited "discriminatory intent"(the fourth prong of the McDonnell-Douglas test) towards Plaintiffs. (Union Obj. at 9-13). It argues that Judge Strawbridge failed to properly consider Durkalec's deposition testimony, in which he explained that any statements that Plaintiffs interpreted to be discriminatory were, in fact, benign. (Id.).

Specifically, the Union argues that Judge Strawbridge improperly credited Bronson's "subjective" belief about the meaning of Durkalec's comment that "my people are still out of work" despite Durkalec's own testimony that by "my people," he meant Local 1073 Union members "as a whole," not just white men. (Id. at 9-11 (citing ECF 208 Ex. 2 ¶¶ 283-285)). Further, the Union argues, Durkalec's comment amounted to no more than a "stray comment," which is insufficient to preclude summary judgment. (Id.).

Similarly, Durkalec explained in his declaration that by the term "this is work that men don't want to do," his use of the word "men" referred to "all Local 1073 members." (Id. at 12 (citing ECF 208 Ex. 2 ¶¶ 278)). The Union explained that Durkalec was not suggesting that this was work that was available to women because it was work that men did not want to do. (Id.). Additionally, Durkalec explained that he could not refer Butt to a particular work opportunity in 2010 not because he was discriminating against Plaintiffs, but because the contractor has specifically requested two Union members with whom he had worked in the past. (Id.).

These objections by the Union are similarly meritless. In the R&R, Judge Strawbridge concluded—as did the Third Circuit—that summary judgment is inappropriate as to Plaintiffs' race and gender discrimination claims because, *inter alia*, Durkalec's statement to Bronson that "my people are still out of work" could reasonably be interpreted to refer to white men. (R&R at 26-27). Durkalec's self-serving testimony about the meaning of that and other statements does not eviscerate that dispute of material fact; to the contrary, it deepens it, and a trier of fact will need to make credibility determinations as to the meaning of the "my people" and various other statements in order to resolve the gender and race based discrimination claims.[5] See e.g.,

---

[5] In its Objections, the Union additionally argues that Plaintiffs should be precluded from using statistics as evidence of discriminatory intent, because the statistics are not meaningful without expert interpretation, which Judge Strawbridge properly precluded after Daubert

8

McCloskey v. Westfield Ins. Co., No. CV 15-6210, 2016 WL 6821900, at *3 (E.D. Pa. Nov. 18, 2016) ("the Court cannot weigh . . . competing testimony on a summary judgment motion.").

### 2. Plaintiffs' Objections

Plaintiffs make various objections to specific findings in Part (A)(1) of the R&R. (See Pls.' Obj. Mem. at 16; Pls.' Obj. I.A, I.B, I.C, I.D, I.E, I.F, I.G). However, these objections are against Plaintiffs' own interests because Judge Strawbridge recommended that this Court rule in *Plaintiffs*' favor with respect to this portion of the motion. (See R&R at 26-27). Accordingly, these objections will be overruled.

### 3. Mitchell's Objections

Mitchell similarly objects to Part (A)(1) of the R&R, notwithstanding Judge Strawbridge's conclusion that Plaintiffs' claims should not be dismissed. Mitchell argues that while she "recongnize[s]" that the R&R recommends denying the Union Defendants' Motion as to this claim, Judge Strawbridge erred in failing to consider certain additional facts in the record that showed that jobs were gained by referral rather than by open solicitation (Mitchell Obj. at 2-3). Mitchell also argues that the CFES report was improperly excluded. Because Judge Strawbridge agreed with Mitchell that there was a dispute of material fact as to whether the Union's referral process was discriminatory (R&R at 22), these objections are also overruled.

---

motions. (Union. Obj. at 13-14). This objection will also be overruled, as it is not relevant to the resolution of the summary judgment motion at hand. As Judge Strawbridge stated in the R&R, the admissibility of Plaintiffs' proffered statistical evidence will be decided at the time of trial. (R&R at 26).

9

### ii. Objections to R&R Part (A)(1)(a): Judge Strawbridge's recommendation that the Court grant the motion as to Plaintiffs Butt, Mitchell and Bronson's claims of race discrimination under § 1981 as to Coryell

#### 1. Plaintiffs' Objections

Plaintiffs object to Part (A)(1)(a) of the R&R, arguing that Judge Strawbridge failed to properly consider evidence in the record that Plaintiffs complained about race discrimination to Coryell and that Coryell knew about—yet failed to correct or address—racial discrimination against Plaintiffs. (Pls.' Obj. II; Pls.' Obj. Mem. at 17-18). They additionally argue that "Coryell tried to interfere with Plaintiff Butt . . . from obtaining work at TSSI [a union contractor]." (Pls.' Obj. Mem. at 18 (citing ECF 178-3 ("Butt Decl."))).

This objection will be overruled. Judge Strawbridge concluded, and this Court agrees, that Plaintiffs have not pointed to any specific evidence in the record (other than self-serving and conclusory statements in their own declarations) (see Butt's Decl.) to support their claim of specifically racial discrimination by Coryell. As Judge Strawbridge stated, "the focus of the evidence presented is plainly more on Plaintiffs' status as women than as African Americans." (R&R at 26). While, as discussed above, there was specific evidence in the record sufficient to preclude summary judgment of race discrimination claims *as to Durkalec*, there is no such similar evidence in the record *as to Coryell*. (Id. at 26-27).

### iii. Objections to R&R Part (A)(2): Judge Strawbridge's recommendation that the Court grant the motion as to Plaintiff Butt, Mitchell and Bronson's claims of retaliation under Title VII

Objections to this part of the R&R center on whether Plaintiffs proffered enough evidence to create a dispute of material fact as to whether Butt and Mitchell were retaliated

against for testifying about discrimination within the Union at the "Mayor's Commission on Construction Identity Diversity." (R&R at 27).

### 1. Mitchell's Objections

Mitchell first argues that Judge Strawbridge erred in recommending that the Court grant summary judgment as to this claim because Durkalec admitted, in his deposition, that he "directed a union contractor to write and submit a derogatory and false letter about the Plaintiffs in response to their protected activity." (Mitchell Obj. Mem. at 1; see Mitchell Obj. at 5). She also argues that Durkalec provided conflicting testimony regarding when exactly he became aware that Plaintiff had testified before the Mayor's Commission, and that the "changing story calls into question his credibility as well as his consciousness that he had committed a wrong by requesting the letter be sent." (Mitchell Obj. at 6).

These objections, too, lack merit. Judge Strawbridge's discussion of Plaintiffs' retaliation claim is thorough. Judge Strawbridge first noted that it was not disputed that Plaintiffs' testimony before the Mayor's Commission was a "protected activity." He expressed doubt, however, as to whether the facts surrounding Durkalec's solicitation of a letter from Butt and Mitchell's former employer explaining his reasons for their termination was a "materially adverse action" sufficient to "dissuade a reasonable worker" from making a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006); see R&R at 27-28. He explained,

> [w]hile the Union, through Durkalec or anyone else, took no immediate action in response to their testimony, he was later contacted by the press and asked to comment. He contacted Plaintiffs' employer and asked him to document why Butt and Mitchell were terminated. The employer complied and reported that the terminations were related to job performance. Durkalec then passed this information to the press as a response to its inquiry.

11

R&R at 28 (citing ECF 172-4 at 121-22)). Further indicating his doubt as to whether Durkalec's action was retaliatory, Judge Strawbridge correctly analogized this case to <u>Shingara v. Skiles</u>, 274 F. App'x 164, 167-68 (3d Cir. 2008), where the Third Circuit held that the defendants' media communications did not constitute "adverse action" because they were intended to rebut a prior news report, not to harm the plaintiff. (R&R at 29-30).

Judge Strawbridge next reasoned that "[w]hile we might be able to conclude that this activity constituted a 'materially adverse action,'" Plaintiffs have still failed to establish that there was a "causal relationship between the protected activity and the adverse action," which is the third prong of the retaliation test. (R&R at 30). Specifically, Judge Strawbridge found that there was no evidence in the record to create a dispute of material fact as to any "negative consequences of the subsequent newspaper article," such as the Union's failure to refer, or even that the *Union* should be held responsible for the a *contractor's* subsequent failure to hire. (R&R at 30).

After reviewing the record, the Court agrees with Judge Strawbridge's reasoning and conclusions. While Judge Strawbridge did so only implicitly, the Court finds that Durkalec's solicitation of the statement from Butt and Mitchell's employer did not constitute an "adverse employment action," but rather was a legitimate effort for the Union to protect itself against accusations of discrimination. This conclusion is bolstered by the fact that Durkalec only took any action in response after it was specifically requested of him by the media. (R&R at 29).

While Mitchell argues in her Objection that the solicited statement was "knowingly false," she does not substantiate that allegation with any evidence in the record.[6] (Mitchell Obj. at 5).

Moreover, as Judge Strawbridge explained in the R&R, even if Durkalec's action could properly be deemed "materially adverse," Plaintiffs failed to establish a causal connection between the two. (R&R at 29-31). The Court agrees.

### 2. Plaintiffs' Objections

Plaintiffs similarly make various objections to Part (A)(2) of the R&R. In their memorandum in support of their Objections, Plaintiffs argue that there was sufficient evidence in the record to create a genuine dispute of fact as to whether Durkalec's solicitation was retaliatory. The argue that Durkalec solicited a "knowingly false statement" from Butt's contractor, which was done not to "substantiate the claim," but rather to "paint[] Plaintiff Butt in a negative light so that other contractors would not, and did refuse, to work with her, which would dissuade any reasonable person in Plaintiff's position from making reports of discrimination." (Pls. Obj. Mem. at 20-22; Pls.' Obj. I.I). Plaintiffs specifically object to Judge Strawbridge's conclusion that there was "no specificity of timing for when the [Union] solicited a negative referral from a contractor in response to Butt's testimony," (Pls.' Obj. I.H), and his conclusion that Plaintiffs failed to identify any particular "adverse impact" that Butt suffered, since the record reflects that, after Durkalec solicited the statement, she was rejected for employment because she was known as the "girl in the paper." (Pls.' Obj. at 5).

These objections will be overruled for the same reasons as outlined above. There is no record evidence that the solicited statement from the contractor was false. As the Union's

---

[6] Because there is no evidence of falsehood or retaliatory motive, as the Union points out in its Opposition to Plaintiff's Objections (ECF 219 at 11), it isn't relevant whether a fact finder believes that Durkalec solicited the statement before or after Plaintiffs' commission testimony.

13

Opposition to Plaintiffs' Objections points out, while Plaintiffs cite Butt's deposition testimony for that proposition, nothing in the transcript actually suggests that it was false, knowingly false, or made with retaliatory animus. (ECF 220 at 10). Additionally, Butt's argument that she suffered an adverse action in that a contractor recognized her as "the girl from the news" both lacks specificity and is "attributable hearsay and should not be considered at summary judgment." (Id.). This Court agrees.

### a. OBJECTIONS RE: MOTION FOR SUMMARY JUDGMENT FILED BY THE UNION AS TO HOWARD'S CLAIMS (ECF 150)

#### i. Objections to R&R Part (B)(1): Judge Strawbridge's recommendation that the Court grant the motion as to Howard's claims of gender and race discrimination under Title VII, the PHRA and § 1981

#### 3. Plaintiffs' Objections

Plaintiffs make various objections to Part (B)(1) of the R&R, all of which focus on whether the Union exercised the requisite control over Howard's workplace such that it could be liable for gender and race discrimination under Sections 2000e-2(c)(2) or (3). (Pls.' Obj. I.K; I.N). First, Plaintiffs object to Judge Strawbridge's finding that the fact that PHA supervisors were also Union members was, "standing alone," insufficient to show the requisite control over workplace conditions. (Pls.' Obj. I.L; R&R at 34).

This objection is meritless. As Judge Strawbridge concluded, "there is no evidence that [the PHA supervisors] acted primarily as Union members or at the direction of any union agent while employed at PHA" (see R&R at 34), and Howard points to no evidence in her Objections that was not considered in the R&R.

Plaintiffs also object on the basis that Judge Strawbridge erred in finding that there was no evidence that the Union caused Howard to continue to work with Nate Green, a fellow Union

14

member who allegedly assaulted her. (Pls. Obj. I.M). As Judge Strawbridge found, however, "Howard has produced no evidence to indicate that the Union took part in placing her on assignment with Nate Green," and Plaintiffs, again, point to no evidence in their Objections not considered in the R&R. (R&R at 34).

Additionally, Plaintiffs objected to the R&R to the extent that it was based on a finding that the email sent by Mike Kinkade (Howard's supervisor) regarding Howard's termination was sent in his capacity as a PHA supervisor rather than in his capacity as a Union member. (Pls.' Obj. I.O).

With this objection, Plaintiffs ignore that Judge Strawbridge's finding here was explicitly not based on that distinction. Instead, Judge Strawbridge found that "while . . . there is a genuine dispute between the parties as to whether Kinkade was acting as a PHA supervisor or Union member in sending the email," even if he was acting in his capacity as a Union member, Howard still "failed to present evidence that would raise a genuine dispute as to whether Kinkade, through the Union, had any discriminatory intent in terminating her[.]" (R&R at 36). Plaintiffs point to no evidence that undermines this conclusion.

As to the Union's proffered legitimate, non-discriminatory reason ("LNDR") for its failure to grieve on Howard's behalf, Plaintiffs object to Judge Strawbridge's decision to credit the Union's position that it believed in "good faith" that it was contractually precluded from filing grievances on Howard's behalf. (Pls.' Obj. IV, p. 5). Plaintiffs argue that this belief was not, in fact, in "good faith," but rather was pretextual, since the Union "filed grievances for Provisional employees and did so for a Caucasian male provision employee, [named] Shapcott." (Pls.' Obj. Mem. at 24).

15

This objection, too, will be overruled. For one, Howard did not raise this argument on summary judgment, so cannot raise it for the first time here. In any event, as the Union's Opposition to Plaintiffs' Objections point out, there is no evidence in the record that Shapcott—the only other person for whom Durkalec has ever filed a grievance—was a provisional employee. The record, by contrast, undisputedly shows that Shapcott was a *full-time maintenance carpenter*, employed by the PHA. (ECF 218 at 6-7 (citing ECF 150-4 ¶ 70)).

### iv. Objections to R&R Part (B)(2): Judge Strawbridge's recommendation that the Court grant the motion as to Howard's claims of retaliation under Title VII

#### 1. Plaintiffs' Objections

Plaintiffs object to Part (B)(2) of the R&R—that the Court grant Defendants' motion with respect to Howard's retaliation claim—on two grounds. First, they object to Judge Strawbridge's conclusion that Howard failed to allege that her March 2011 termination was an "adverse employment action" for purposes of the second prong of the Title VII retaliation test (there was no dispute as to whether Howard, by making formal and informal complaints to the Union, engaged in a "protected activity"). (Pls.' Obj. I.Q). Second, they object to the finding that Howard failed to show a "causal connection" between her "protected activity" and the "adverse employment action" (i.e. the Union's failure to grieve on her behalf). (Pls.' Obj. I.R). Plaintiffs argue that there is sufficient evidence in the record that Howard was subject to retaliation by the PHA, because she was "immediately terminated after making a claim" about being subject to a hostile work environment, notwithstanding the fact that "Kinkade told Plaintiff that she was being terminated because of tools." (Pls.' Obj. Mem. at 26).

These objections will also be overruled. In the R&R, Judge Strawbridge thoroughly explained that the record showed that Howard satisfied the "protected activity" prong of the

retaliation analysis, and that while her March 2011 termination could, theoretically, satisfy the "adverse action" prong of the analysis, Howard never argued that it did, so he was "left with the Union's alleged failure to grieve as Plaintiff's sole adverse action." (R&R at 41). The R&R further concluded that there was no causal connection between Howard's protected activity and the Union's "failure to grieve" because there was no "unusually suggestive" temporal proximity between the two. (R&R at 42). Last, the R&R concluded that even if there was a causal connection, the Union put forth an LNDR for its failure to grieve; namely, that it believed it was contractually precluded from doing so, and Howard failed to rebut the LNDR. (R&R at 44). While Plaintiffs argue in their Memo in support of their Objections that Howard was "immediately terminated" after complaining about a hostile work environment, as mentioned above, Howard did not properly raise her termination as an "adverse employment action" in her opposition to the Union's motion for summary judgment. (R&R at 41). Additionally, Plaintiffs point to no evidence in the record that would undermine Judge Strawbridge's conclusions that there was no "unusually suggestive" proximity between Howard's formal and informal complaints. Howard's complaints were made in July 2008 and June 2010, respectively, and Judge Strawbridge reasonably "assumed" that the Union's alleged failure to grieve "occurred in close proximity to the alleged September 2009 assault by Nate Green." (See R&R at 42 n.19; see also ECF 217 at 4 n.2).

    **j. Objections to R&R Part (B)(3): Judge Strawbridge's recommendation that the Court grant the motion as to Howard's claim under the Labor Management Relations Act**

    **2. Plaintiffs' Objections**

Plaintiffs object to Judge Strawbridge's recommendation that this Court deny Defendants' motion with respect to the LMRA claim, arguing that he wrongly concluded that it

17

is "clear" that the Union can only "refer" members to contractors, rather than "assign" them for work (Pls. Obj. I.S); and that there is no evidence to show that the Union decided who to refer for work at PHA, and that those decision were made discriminatorily. (Pls. Obj. VI, p. 6).

This objection will be overruled because, notwithstanding the merits of the claim, Judge Strawbridge correctly concluded that this claim was barred by the applicable 6-month statute of limitations ("SOL"), because Howard filed this claim against the Union in January 2013. January 2013 was 18 months after the "very latest" date at which she could have been on notice that (1) Durkalec had filed a grievance on her behalf and (2) "Durkalec had stated that he could not further pursue the grievance due to her status as a provisional carpenter," all of which happened in May 2011. (R&R at 43, 46). Plaintiffs do not object to Judge Strawbridge's conclusion regarding application of the SOL.

### b. OBJECTIONS RE: MOTION FOR SUMMARY JUDGMENT FILED BY THE PHA AS TO HOWARD'S CLAIMS (ECF 148)

#### k. Objections to R&R Part (C)(2): Judge Strawbridge's recommendation that the Court grant the motion as to Howard's claim of retaliation under Title VII

##### 1. Plaintiffs' Objections

Plaintiffs object to the R&R's conclusion regarding Howard's retaliation claim against the PHA, arguing that the PHA knew of Howard's protected activity ((1) filing EEOC charge in August 2009 and (2) filing a human resources complaint about Nate Green in September 2009), and there was a causal connection between her protected activity and her termination, since her complaints continued "up to the time of her termination." (Pls. Obj. VII, p. 7).

This objection is meritless. As the R&R explained, to establish the causal link for retaliation claims, the defendant has to, preliminarily, be aware of the protected activity. Here, Plaintiffs failed to present any evidence that the PHA was aware of the EEOC charge (because it

18

was filed against the Union, not the PHA). (R&R at 54-55 (citing ECF 148-2 at 25; ECF 173-2 at 10)). Even if the Union was aware, Judge Strawbridge properly found that the timing between the two events (18 & 19 months) was too remote to be "unusually suggestive" of retaliatory animus. (R&R at 55-56). While Howard now argues that her complaints continued "up to the time of her termination" (Pls. Obj. Mem at 25-26), she cites nothing in the record to support that assertion, nor did she in response to PHA's Motion to Summary Judgment (see ECF 173; ECF 217, PHA's Opposition to Pls.' Obj. at 4 n.2).

> l. **Objections to R&R Part (C)(3): Judge Strawbridge's recommendation that the Court grant the motion as to Howard's claim of "breach of contract" under the Davis-Bacon Act**

### 2. Plaintiffs' Objections

Plaintiffs argue that the R&R improperly recommends granting the PHA's motion with respect to Howard's "breach of contract" claim under the Davis-Bacon Act because there is evidence to show that the Union decided who to refer for work at PHA, and that the Union's decisions were made discriminatorily. (Pls.' Obj. VIII, p. 8, 6).

The R&R—following a case in this district that confronted a similar issue, Miccoli v. Ray Commc'ns, Inc., No. CIV. A. 99-3825, 2000 WL 1006937, at *1 (E.D. Pa. July 20, 2000)—concluded that Howard's "breach of contract" claim should be dismissed because it was an impermissible attempt to circumvent the fact that the Davis-Bacon Act does not afford a private right of action by improperly couching her claim as a "third-party beneficiary" claim. (R&R at 58-59). The Court agrees, and Plaintiffs unrelated objection will be overruled.

## V. Conclusion

Judge Strawbridge prepared an extensive Memorandum giving full consideration to the contentions of the parties and outlined in great detail the reasons for his rulings on the various motions for summary judgment. The parties have filed objections to almost every one of Judge Strawbridge's designations of factual issues, and legal conclusions—without once showing that he violated any Third Circuit or Supreme Court jurisprudence on employment law, or summary judgment procedure. Indeed, to some extent, the Defendants have attempted to urge this Court to contradict the holding of the Third Circuit that certain evidence presented by Plaintiffs warrants a trial. The foregoing discussion shows that all of the objections filed by the parties to the R&R are without merit. Indeed, some of the objections seem to be filed for the sake of prolonging litigation, without any realistic understanding that factual issues remain and therefore a trial will be required. Perhaps not every objection has been discussed in this memorandum, but certainly the major objections have been discussed and refuted.

The Court's May 1, 2017 Order adopting the R&R (ECF 222) outlines how this case will proceed.

Signed: /s/ Michael M. Baylson
U.S.D.J., 5/15/17

O:\Jessica.2016\09-cv-4285 Butt v. United Brotherhood\Memo Adopting R&R.docx